IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES L. TONEY                                                                                  PLAINTIFF

v.                                    Civil No. 6:17-cv-06100

CORPORAL HEATH DICKSON,
Malvern Police Department ("MPD");
SERGEANT KEITH PRINCE, MPD;
ASSISTANT CHIEF JIM BAILEY, MPD;
and CHIEF OF POLICE DONNIE
TABER, MPD                                                                                   DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed *pro se* by Plaintiff, James L. Toney, under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendants Heath Dickson, Keith Prince and Jim Bailey. (ECF No. 55). Plaintiff filed a Response (ECF No. 60) and Defendants filed a Reply. (ECF No. 63). The matter is ripe for consideration.

**I. BACKGROUND**

Plaintiff is currently an inmate in the Arkansas Department of Correction, Tucker Unit. This case arises from events that occurred on August 23, 2017, while Defendants Dickson and Prince were attempting to execute an arrest warrant on Plaintiff at his home. At the time of the incident, Defendants Dickson and Prince were officers with the City of Malvern Police Department and Bailey was the Assistant Chief of Police. Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.[1]

On August 23, 2017, Defendants Dickson and Prince arrived at Plaintiff's residence at 9:09 p.m. to execute an arrest warrant that came through the National Crime Information Center

---

[1] Defendants submitted Defendant Dickson's body camera video of the August 23, 2017, incident in support of their motion for summary judgment. (ECF No. 57-1, filed conventionally with the Clerk). The Court has relied in large part on the video footage in outlining the relevant facts.

1

("NCIC").² Defendant Dickson knocked on Plaintiff's door and Plaintiff opened the door. (ECF No. 57-2, p. 1). Defendant Dickson advised Plaintiff that there was a warrant for Plaintiff's arrest and that Defendant Dickson was going to take Plaintiff in for possession charges. *Id.* Defendant Dickson then asked Plaintiff if he had been given papers on a warrant when he was arrested a few days earlier. Plaintiff stated he was not served papers on a warrant. *Id.* Defendant Dickson asked Plaintiff a second time if he was served papers on a warrant. Plaintiff then told Defendant Dickson that he did have the papers in his billfold. *Id.*

Defendant Dickson asked Plaintiff to show him the papers. Defendants Dickson and Prince followed Plaintiff inside his home while he began searching for the warrant papers. Plaintiff yelled toward the back of his home and asked an unidentified person if they knew where his billfold was. Defendants Dickson and Prince followed Plaintiff throughout his living room and into the kitchen using their flashlights to look around. (ECF No. 57-1). Defendant Prince moved toward the kitchen counter where there appeared to be a billfold. Plaintiff told him not to touch it because the billfold belonged to someone else. Plaintiff then advised Defendants Dickson and Prince that his billfold must be in his truck and he walked toward the front door.

Defendants Dickson and Prince followed Plaintiff outside of the home to his vehicle and watched Plaintiff search the vehicle for the warrant. While Plaintiff was looking in the front seat of his vehicle for the warrant papers, Defendants Dickson and Prince received a call concerning an assault with physical injury at another location. Defendants asked Plaintiff to find the warrant so that they "didn't have to take him in." (ECF No. 57-1). Defendants Dickson and Prince then left Plaintiff's residence. (ECF No. 57-2). The entire incident lasted just under three minutes. (ECF No. 57-1).

---

² The record reflects that Defendant Jim Bailey was not present during the attempted arrest and search on August 23, 2017.

Approximately twenty (20) minutes after Defendants Dickson and Prince left Plaintiff's home, the warrant for Plaintiff's arrest that Defendants Dickson and Prince had relied on was cleared rendering it inactive. (ECF No. 57-2, p. 7). After learning that the warrant had cleared the NCIC system that evening, Defendants Dickson and Prince returned to Plaintiff's residence. Defendant Dickson knocked on Plaintiff's door, but Plaintiff did not open it. Defendant Dickson advised Plaintiff through the closed door that the warrant was invalid, and that they would not be coming back.[3] *Id.* at p. 2.

Plaintiff filed his Complaint on September 25, 2017. (ECF No. 1). On February 12, 2018, Plaintiff filed an Amended Complaint naming Corporal Heath Dickson, Sergeant Keith Prince, and Assistant Chief Jim Bailey as Defendants. (ECF No. 20). Plaintiff initially asserted three claims in his Amended Complaint: (1) violation of his Fourth Amendment Rights during the attempted execution of an arrest warrant on August 23, 2017; (2) unlawful seizure of his property on August 30, 2017, by Defendant Dickson; and (3) "superior aware of harassment…wrongfully Charge's victimize by Malvern Police Department" against Defendant Jim Bailey. *Id.* at pp. 4-13. On August 9, 2018, Plaintiff voluntarily dismissed claims 2 and 3 of his Amended Complaint leaving only the claims against Defendants Dickson, Prince and Bailey for the alleged violation of his Fourth Amendment rights. (ECF No. 46).[4]

Specifically, Plaintiff claims:

> …Around 9:00 p.m. …I heard Someone knocking At my Door, I thought it was my Brother but when I opened The Door it was officer Heath Dickson And Sgt. Prince, The Pushed me Aside And barged into my house…Officer Dickson Stated He Had a Warrant He and Sgt. Prince Started Searching my Residence. I Asked To See The Warrant Officer Dickson Stated (Shut your mouth I don't need one.) Officer Dickson Shined his flash light Down My hallway and Sgt. Prince Searched my

---

[3] No video footage has been provided to the Court of Defendant Dickson and Prince when they returned to Plaintiff's home to inform him that the warrant was invalid.

[4] On August 29, 2018, in response to this Court's order, Plaintiff clarified the claims he intended to dismiss. (ECF No. 51).

> Kitchen. He picked up my Brothers Wallet from The Counter and Searched it. I Asked Him To put it Down and To See Their warrant for the Second Time and They Refused. I Asked Them To leave…They Refused. About five or Ten minutes had Past They Received A Call and Left…I Reported This Incident To officer Bailey and he never Responded. About 10:30 p.m. officer Dickson And Sgt. Prince Returned. They Beat on my door for about Five minutes and left.

(ECF No. 20, p. 5). Plaintiff is suing Defendants Dickson, Prince and Bailey in their individual and official capacities. He is seeking compensatory and punitive damages. (ECF No. 20, p. 13).

On September 14, 2018, Defendants filed the instant Motion for Summary Judgment and a Memorandum Brief in Support of the motion, arguing that they are entitled to judgment as a matter of law because: (1) Defendants did not violate Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure; (2) they are entitled to qualified immunity; and (3) Plaintiff has not identified any policy or custom of the City of Malvern which violates his constitutional rights. (ECF No. 56). On October 12, 2018, Plaintiff filed a Reply restating his claims against Defendants. (ECF No. 60).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Plaintiff alleges Defendants Dickson and Prince violated his constitutional rights when they entered and searched his home on August 23, 2017, to execute an arrest warrant on Plaintiff without a copy of the warrant. Plaintiff also alleges Defendant Bailey never responded to his complaint concerning the incident. Defendants assert their actions did not violate Plaintiff's constitutional rights and they are entitled to qualified immunity.

**A. Qualified Immunity**

The qualified immunity doctrine provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (internal quotation marks omitted)).

Whether Defendants Dickson, Prince, and Bailey are entitled to qualified immunity depends on "whether the facts alleged, taken in the light most favorable to [Plaintiff] show that

5

[Defendants'] conduct violated a constitutional right. If so, then the Court must determine whether the constitutional right was clearly established at the time." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Flowers v. City of Minneapolis*, 478 F.3d 869, 872 (8th Cir. 2007)) (internal quotation marks omitted). As discussed below, the Court finds that none of the Defendants violated Plaintiff's constitutional rights and therefore it is unnecessary to address the second prong of the qualified immunity analysis.

   1. **Defendant Jim Bailey**

As an initial matter, the Court finds Plaintiff has failed to state a constitutional claim against Defendant Jim Bailey. Individual liability under 42 U.S.C. § 1983 attaches only if a defendant directly participated in a constitutional violation or if failure to supervise and train an offending employee caused a constitutional deprivation. *Williams v. Davis*, 200 F.3d 538 (2000) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

The record demonstrates that Defendant Bailey was not involved in any way in the attempted arrest and search of Plaintiff's home on August 23, 2017. Moreover, Plaintiff has not alleged that Defendant Bailey failed to train or supervise Defendants Dickson and Prince. Instead, Plaintiff claims he informed Defendant Bailey about what happened and Bailey "never responded". (ECF No. 20, p. 5). The law is clear that inmates do not have a constitutionally protected right to a grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). There is also no constitutionally protected right to engage in a grievance procedure at a law enforcement agency. For the same reason that an inmate cannot bring a § 1983 claim premised on failure to process grievances, no § 1983 claim premised on a law enforcement agency's failure to process grievances can proceed.

Accordingly, the Court finds that Defendant Bailey is entitled to qualified immunity and summary judgment should be granted as to Plaintiff's individual capacity claims against him.

### 2. Attempted Arrest – Defendants Dickson and Prince

The Fourth Amendment guarantees citizens a right not to be arrested absent the existence of probable cause. *Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003) (citing *Habiger v. City of Fargo*, 80 F.3d 289, 297 (8th Cir. 1996)). "The Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142-143 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is there. *Payton v. New York*, 445 U.S. 573, 586 (1980).

A review of the record confirms that neither Defendant Dickson nor Prince violated Plaintiff's constitutional rights during the attempted arrest on August 23, 2017. Defendant Dickson ran a search in NCIC for outstanding warrants that evening and an arrest warrant for possession appeared for Plaintiff. (ECF No. 57-2, pp. 3-6). Based on this warrant Defendants Dickson and Prince went to Plaintiff's residence to arrest him. Although the warrant was cleared and invalidated after Defendants left Plaintiff's residence, there is nothing in the record to suggest that either Defendant Dickson or Prince was aware of anything that would have made the warrant invalid at the time they attempted to arrest Plaintiff.

In addition, Plaintiff's claim that Defendants Dickson and Prince violated his constitutional rights because they did not have a copy of the arrest warrant with them when they came to his home is without merit. Police officers are not required to possess the actual warrant to arrest an individual. *See* Fed. R. Crim. P. 4(c)(3) and Ark. R. Crim. P. 4.3 (if officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense

charged, and at defendant's request, show the original or duplicate original warrant as soon as possible).

The Court finds that Defendants Dickson and Prince had probable cause to come to Plaintiff's home to execute what they believed was a valid warrant. Therefore, Defendants did not violate Plaintiff's Fourth Amendment rights when they attempted to arrest him, and they are entitled to qualified immunity on this claim.

### 3. Search and Seizure – Defendants Dickson and Prince

Plaintiff also has the right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution. *Terry v. Ohio*, 392 U.S. 1, 8 (1968). The Constitution prohibits unreasonable searches and seizures, but not all searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222 (1960). In determining the reasonableness of a law enforcement practice, a court must weigh the public interest promoted by the practice against its intrusion upon the personal rights of the individual protected by the Fourth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "Whether an official's conduct was objectively reasonable is a question of law." *Engleman v. Deputy Murray,* 546 F.3d 944 (8th Cir. 2008). The law is clear that police officers may perform a protective sweep incident to an arrest to protect themselves or others when executing an arrest warrant. *Lyles v. City of Barling*, 17 F. Supp. 2d 848, 857 (W.D. Ark. 1998), *aff'd*, 181 F.3d 914 (8th Cir. 1999); *U.S. v. Blake*, 484 F.2d 50, 57 (8th Cir. 1973), *cert. denied*, 417 U.S. 949 (1974) (once inside, a quick and cursory viewing of the apartment is permissible to check for person who may present a security risk).

While the Court is required to view the facts in the light most favorable to Plaintiff, it must only take as true those assertions properly supported by the record. *See Wilson v. Lawrence County,* 260 F.3d 946, 951 (8th Cir. 2001). Here, Plaintiff's allegations are contradicted by the video evidence. The body camera footage from the evening of August 23, 2017, demonstrates

Defendant Dickson and Prince entered Plaintiff's home through an open door and followed him using their flashlights to look around the living room and kitchen while Plaintiff searched for the warrant paperwork. Defendants did not "spring open" a screen door or "push" their way into Plaintiff's home. At no point in time did the Defendants push or physically touch Plaintiff. In addition, Defendant Dickson never told Plaintiff to "shut his mouth" nor did he indicate that he did not need a warrant to arrest Plaintiff. Further, the video does not show either Defendant Dickson or Prince picking up or searching the wallet belonging to Plaintiff's brother. Then, after following Plaintiff out of his home so he could look in his vehicle for the warrant paperwork, Defendants Dickson and Prince received a call involving an assault at another location and left Plaintiff's residence without arresting him. Although Plaintiff made comments to the effect that Defendants were "messing" with him, Plaintiff never asked them to leave. As previously stated, the entire encounter lasted less than three (3) minutes.

The Court finds that the conduct of Defendants Dickson and Prince during the search of Plaintiff's home did not violate Plaintiff's Fourth Amendment rights. Therefore, Defendants are entitled to qualified immunity. Accordingly, Defendants Dickson and Prince are entitled to summary judgment on Plaintiff's individual capacity claims regarding the search of his home.

**B. Official Capacity Claims**

Plaintiff also asserts official capacity claims against Defendants Dickson, Prince and Bailey. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Dickson, Prince and Bailey are

9

treated as claims against their employer – the City of Malvern. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Defendants' official capacity liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has not alleged any custom or policy of the City of Malvern that contributed to a violation of Plaintiff's civil rights. Instead, Plaintiff has simply reiterated his individual capacity claims against Defendants. Accordingly, Plaintiff's official capacity claims fail as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 55) is **GRANTED**. Plaintiff's claims against Defendants Heath Dickson, Keith Prince, and Jim Bailey are **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED** this 20th day of December 2018.

/s/ P. K. Holmes, III
HON. P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE